In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00104-CV


______________________________




IN THE MATTER OF THE MARRIAGE OF


SAMANTHA DINK RIDGEWAY AND DOUGLAS KEITH RIDGEWAY

AND IN THE INTEREST OF DALTON KEITH RIDGEWAY AND

DILLON KANE RIDGEWAY, CHILDREN




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 06-0924




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Douglas Keith Ridgeway appeals a trial court's property division in an order of divorce from
Samantha Dink Ridgeway. He argues that, because the trial court allegedly undervalued a
community business awarded to his wife, she has received a disproportionate share of the community
assets. Based on the values of the community property, we find Douglas received a greater share of
the community assets than Samantha. We affirm the judgment of the trial court.

I. Factual and Procedural Background

 In her petition for divorce, Samantha asked the trial court to award her a disproportionate
share of the community estate due to Douglas' fault in the breakup of the marriage. An agreed
schedule of assets ("Schedule A") was prepared listing the estimated value of each item in the
community estate. The parties stipulated and agreed on all values of property in the community
estate except the value of Cuts Galore, a family owned and operated hair salon. The Ridgeways
purchased Cuts Galore in 1999 for $10,000.00 according to the security agreement, bill of sale, and
promissory note. (1) Samantha was a stylist at the salon and also ran the business, purchased supplies,
scheduled appointments, and hired and fired employees. Douglas claimed he handled the books,
while Samantha stated this was a shared responsibility.

 Prior to trial, the parties stipulated that the previous owner would testify that the business was
worth $20,000.00 if Samantha remained with the business, and $2,000.00 if she did not. Samantha
believed this was a correct valuation for Cuts Galore because the building was leased, the equipment
was fifteen years old, and she could not take the equipment with her if she left. 

 Douglas believed the business was worth more. He hired accountant Dorothy Peterson, who
estimated Cuts Galore was worth $87,326.00. Peterson attached charts to her report indicating that,
from 2003 until 2006, Cuts Galore made an average net earning of $43,262.00. In computing the
final $87,326.00 valuation, Peterson conducted the following calculation:

 Weighted average normalized earnings $ 43,262

 Less: Tax at corporate rate (15%) (6,489)

 After tax earnings 36,773

 Capitalization rate 19.16%

 Value of 100% Cuts Galore before personal goodwill and discount 191,926 

 Personal goodwill related to Samantha and Keith Ridgeway @ 35% (67,174)

 Value of 100% Cuts Galore before discount 124,752

 Discount for lack of marketability @ 30% (37,426)

 Value of community interest in Cuts Galore owned by Samantha $ 87,326

 and Keith Ridgeway 


Although Peterson applied the income approach, she was not called at trial to support the
methodology for her valuation, or explain the figure alleged to be the "Value of 100% Cuts Galore
before personal goodwill and discount."

 During trial, Douglas agreed to take the house and let Samantha have Cuts Galore because
the house was worth about $90,113.00. (2) The trial court awarded the business to Samantha, the house
to Douglas, and divided the community personal property. The trial court found the value of Cuts
Galore to be $20,000.00. The question in this case is whether the trial court's valuation of the hair
salon business was in error causing Samantha to receive an improper disproportionate share of the
community property. 

II. Standard of Review 

 A trial court has broad discretion to divide community property in a manner that is just and
right. Tex. Fam. Code Ann. § 7.001 (Vernon 2006); Bogle v. Bogle, No. 13-05-608-CV, 2007 WL
2409824, at *1 (Tex. App.--Corpus Christi Aug. 24, 2007, no pet.). A just and right division does
not require a trial court to divide the marital estate into equal shares. In re Marriage of McFarland,
176 S.W.3d 650, 659-60 (Tex. App.--Texarkana 2005, no pet.) (citing Murff v. Murff, 615 S.W.2d
696, 698-99 (Tex. 1981)). The court can consider a number of factors in making this determination,
including education, disparity of income earning potential and capacity, business opportunities,
disparity in age, relative physical condition, relative financial condition and obligations including
size of separate estates, and benefits the party not at fault would have derived from continuation of
the marriage. Id.; In re Marriage of King, No. 06-08-00120-CV, 2008 WL 5058851, at *1 (Tex.
App.--Texarkana Dec. 2, 2008, no pet.). 

 We review a trial court's division of property under an abuse of discretion standard. Id. at
*2. It is the appellant's burden to establish that the trial court abused its discretion by acting without
reference to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex. 1985); Bogle, 2007 WL 2409824, at *1 (citing Farley v. Farley, 930 S.W.2d 208,
211 (Tex. App.--Eastland 1996, no writ)). In reviewing a trial court's valuation of a particular asset,
we must first consider whether the trial court had sufficient evidence to support its calculation. 
Bogle, 2007 WL 2409824, at *1. As an appellate court, we will indulge every reasonable
presumption in favor of the proper exercise of discretion by the trial court. Id. If no findings of fact
or conclusions of law are filed or requested, it will be implied that the trial court made all the
necessary findings to support its judgment. Id. at *1 n.11 (citing Holt Atherton Indus., Inc. v. Heine,
835 S.W.2d 80, 83 (Tex. 1992)). (3) 

 Further, it is not enough for Douglas to merely point out inaccuracies, if any, in a trial court's
valuation of a business. See id. at *2. Douglas must not only "present evidence establishing the true
value of the property, but also prove that the ultimate division, as reappraised, remained manifestly
inequitable, thus warranting reversal." See id. In other words, Douglas must show that the division
adopted by the trial court was manifestly unjust. See Forgason v. Forgason, 911 S.W.2d 893, 896
(Tex. App.--Amarillo 1995, writ denied). 

III. The Trial Court Did Not Err In Its Valuation of Cuts Galore

 The trial court had sufficient evidence to support the determination that Cuts Galore was
worth $20,000.00, including the trial testimony of Samantha, who also kept the books of the
business, the valuation of the previous owner, and the purchase documents suggesting the business
had been bought for $10,000.00 in 1999. See Bogle, 2007 WL 2409824, at *2. Despite this
evidence, Douglas suggests "[n]othing in the Court's ruling indicates that the Court even considered
the expert opinion at hand." In other words, Douglas suggests the trial court abused its discretion
and "clearly disregarded the only expert opinion of the value" instead of addressing how the court
could have abused its discretion in basing the $20,000.00 valuation on other evidence presented in
the trial. Because the trial court as a fact-finder based its decision on ample evidence, we cannot say
it acted without reference to any guiding rules or principles. 

 The trial court also heard evidence from a hair stylist/manager of Cuts Galore regarding the
importance of Samantha remaining as the owner of the business. She emphasized that none of the
employees would work for Douglas, whereas they all enjoyed working for Samantha because she
"works with us." The stipulated testimony of the former owner was that, without Samantha, this
business would be worth only $2,000.00. Samantha readily agreed and testified that, if she should
leave the business, it would be worth about $3,500.00, the value of the equipment. 

 Based on all of the evidence concerning the value of the hair salon, we cannot conclude that
the trial court abused its discretion. The evidence of the value of the business was sufficient to
support the trial court's conclusion that the fair market value was $20,000.00. Using this figure as
the value of the business, Douglas received a larger percentage of the community estate than
Samantha. 

 We affirm the judgment of the trial court.




 Jack Carter

 Justice


Date Submitted: March 16, 2009

Date Decided: March 17, 2009





1. The parties testified at trial the purchase price was $15,000.00. 
2. Although the agreed value of the house was $153,000.00, there was a $62,866.75 debt owed
on the property. 
3. The notice of appeal, filed August 17, 2007, states that Keith is appealing the final decree
of divorce signed on July 24, 2007. A request for findings of fact and conclusions of law was filed
on August 31, 2007, well outside the twenty-day time limit prescribed by Rule 296 of the Texas
Rules of Civil Procedure. See Tex. R. Civ. P. 296; see also Tex. Fam. Code Ann. § 6.711 (Vernon
2006). Therefore, we treat this record as one where findings of fact were neither requested nor filed. 
Valley Mech. Contractors, Inc. v. Gonzales, 894 S.W.2d 832, 834 (Tex. App.--Corpus Christi 1995,
no pet.) (citing Lute Riley Motors, Inc. v. T.C. Crist, Inc., 767 S.W.2d 439, 440 (Tex. App.--Dallas
1988, writ denied)).