

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00036-CV

_____

FRANK KEATHLEY, INDIVIDUALLY AND DBA TOP SHELF ANTIQUES, Appellant

V.

J.J. INVESTMENT COMPANY, L.T.D., Appellee

On Appeal from the 62nd District Court
Franklin County, Texas
Trial Court No. 10,072

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

This appeal follows a procedurally intensive, two-county legal struggle that ultimately has become about collecting attorney fees, including an action in the County Court at Law in Smith County, an appeal to our sister Court of Appeals in Tyler, and an action in the District Court in Franklin County.

Corbitt Baker obtained a judgment against Frank Keathley for $70,000.00[1] in Smith County and then attempted to execute[2] on $40,000.00 in funds payable to Keathley by the Franklin County District Clerk.[3] Keathley was granted a temporary injunction in Franklin County, which froze the execution process while he challenged the writ and underlying judgment in Smith County and, ultimately, in the Tyler Court of Appeals.[4] Keathley lost in Smith County and on appeal to

---

[1]Baker's March 8, 2011, $70,000.00 judgment against Keathley in cause number 51,959-B in Smith County was for attorney fees incurred through the trial of that case.

[2]In an attempt to collect the March 8 judgment, Baker obtained a writ of execution March 30, 2011, which was promptly levied on the district clerk of Franklin County against the monies held for Keathley by the district clerk in Franklin County.

[3]In 2005, J.J. Investment Company, L.T.D. (Investment) had filed suit in the Franklin County district court under cause number 10,072, against Frank Keathley for breach of an oral contract to sell antiques owned by Investment. Keathley filed a counterclaim based on the contract, later adding allegations of fraud, and also sought damages. During the course of the litigation, Keathley deposited $41,763.50 in the registry of the Franklin County district court pursuant to an agreed order. On March 25, 2011, Investment and Keathley filed a joint motion to dismiss and represented to the Franklin County trial court that all matters between them had been compromised and settled. On that same date, that court entered an agreed order of dismissal with prejudice and an agreed order to distribute funds ordering the district clerk to release $40,000.00 of the funds in the registry of the court to Keathley, $845.00 to Keathley's attorney, and $918.50 to Investment. Neither party filed a motion for new trial or notice of appeal, and the order of dismissal and the order to distribute funds became final April 24, 2011.

[4]During this process, Keathley obtained a new judgment in cause number 51,959-B, dated April 12, 2011, purporting to grant Keathley judgment against Baker in that cause (the April 12 judgment). Then, on April 18, 2011, the trial court in Smith County entered an "Order Vacating Final Judgment Erroneously Entered April 12, 2011" in Cause No. 51,959-B (the April 18 order), vacating the April 12 judgment in favor of Keathley as "'erroneously entered'" and reciting that the "Final Judgment entered by this Court on March 8, 2011 (attached hereto as Exhibit 'A') correctly reflects the judgment of this Court based on the verdict of the jury received and accepted by the Court at the conclusion

the Tyler Court of Appeals.[5] Thereupon, Baker requested dissolution of the temporary injunction in Franklin County. In response, Keathley again challenged the validity of the writ in the Franklin County trial court, asserting some already-litigated issues and some new issues. The Franklin County trial court granted Baker's motion to dissolve the injunction, denied all relief requested by Keathley, and ordered its clerk to pay the $40,000.00 in issue, $30,000.00 to Baker and $10,000.00 to Keathley's attorney.[6]

On appeal, Keathley challenges the trial court's order disbursing $30,000.00 to Baker,[7] asserting that the trial court erred because the writ was invalid since it was not based on a final judgment, a writ of execution was not the proper legal remedy to reach a judgment debtor's funds in the possession of the district clerk, the funds in the registry of the Franklin County trial court were not subject to execution, the writ was levied without notice to him and without affording him

---

[5] On April 3, 2013, the Tyler Court of Appeals issued its opinion affirming the Smith County trial court's $70,000.00 judgment in cause number 51,959-B for attorney fees through trial, but modifying the judgment as to appellate attorney fees. *Id.* at *9. The court of appeals also held that the April 18 order reinstated the March 8 judgment, rejecting Keathley's argument that the April 18 order became the final judgment of the trial court. *Id.* at *2, 4.

[6] This order disposed of all claims and parties before the court. *See Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex. 1985). Although Keathley filed requests for findings of fact and conclusions of law, they were not filed until thirty days after the final order was signed. As a result, his request was untimely. *See* TEX. R. CIV. P. 296 (requiring requests for findings of fact or conclusions of law to be filed within twenty days after judgment is signed). No findings of fact and conclusions of law were filed by the trial court since it was not obligated to make written findings of fact and conclusions of law unless a timely request was filed. *See Stangel v. Perkins*, 87 S.W.3d 706, 709 (Tex. App.—Dallas 2002, no pet.). Since Keathley did not make a timely request, we determine this case as one in which findings of fact and conclusions of law were neither requested nor filed. *See Valley Mech. Contractors, Inc. v. Gonzales*, 894 S.W.2d 832, 834 (Tex. App.—Corpus Christi 1995, no writ); *see also Lute Riley Motor, Inc. v. T.C. Crist, Inc.*, 767 S.W.2d 439, 440 (Tex. App.—Dallas 1988, writ denied). In such a case, the trial court is presumed to have "made all findings necessary to support its judgment[,] and we affirm if there is any legal theory sufficiently raised in the evidence in support of the judgment." *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 21 (Tex. App.—Texarkana 2012, no pet.) (citing *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003)).

[7] Neither Keathley nor Baker contest the trial court's award of $10,000.00 to Keathley's attorney.

3

an opportunity to designate his exempt property, the funds owned by Keathley were exempt from execution, and the writ was levied against funds some of which did not belong to Keathley.

We affirm the order of the trial court in Franklin County, because (1) execution can reach funds payable by a court clerk, (2) the funds payable by the Franklin County District Clerk were not *in custodia legis*, (3) *res judicata* bars claims that the vacation and reinstatement of the March 8 judgment render the judgment invalid to support execution, (4) arguing that the execution was premature is an improper collateral attack on the Smith County judgment, (5) the lack of prior notice of the execution did not invalidate the levy, and (6) the funds payable by the Franklin County District Clerk were not exempt from execution.

*(1)     Execution Can Reach Funds Payable by a Court Clerk*

Keathley argues that, since the funds are under the control of the district clerk, they could not be reached by writ of execution. Since Baker was claiming the entire $41,763.50 in the registry of the court, he argues, Baker put the title of the funds in dispute, and therefore, the funds could be reached only by garnishment. Through a writ of garnishment, a creditor can challenge the title to funds held by a third party, and the court then determines the true owner. *Overton Bank & Trust, N.A. v. PaineWebber, Inc.*, 922 S.W.2d 311, 313 (Tex. App.—Fort Worth 1996, no writ) (citing *Bank One, Tex., N.A. v. Sunbelt Savings,F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992)). Keathley claims that, by not properly identifying the funds subject to the writ of execution, Baker improperly placed the burden of determining ownership on the district clerk. As evidence that Baker claimed all of the funds in the registry of the court, Keathley points to a letter from Baker's attorneys to the Franklin County Constable stating, "Our investigation indicates Frank Keathley

4

has on deposit in the registry of the 8th Judicial District Court in Franklin County approximately $41,763.50 associated with Cause No. 10,072 . . . ." However, this letter could also be interpreted as simply identifying the location of property in Franklin County that may be subject to the levy. The letter goes on to advise the constable that the attorneys "are not aware of any other Franklin County property of the debtor on which to levy." Keathley does not refer us to any other evidence, and we have found none, that shows either that Baker claimed the entire amount, or that, if he did, the levy of the writ affected any funds other than the $40,000.00 ordered to be distributed to Keathley. To the contrary, the record reflects that the temporary restraining order entered by the trial court restrained execution only against the $40,000.00 ordered to be distributed to Keathley. It neither mentioned the remainder of the funds held by the clerk nor restrained the clerk from paying those funds pursuant to the agreed order to distribute funds.[8]

Garnishment of the funds payable by the clerk would have been proper. *See, e.g.*, *Hardy v. Constr. Sys., Inc.*, 556 S.W.2d 843, 844 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). However, this does not preclude the use of a writ of execution. In *Gonzales v. Daniel*, the relator obtained a final judgment of garnishment against a bank. After the funds were deposited into the registry of the court, he obtained a writ of execution and levied against the funds held by the district clerk. After the trial court quashed the execution and declared the levy void, Gonzales sought a writ of mandamus. *Gonzales v. Daniel*, 854 S.W.2d 253, 255 (Tex. App.—Corpus Christi

---

[8]Although the temporary injunction subsequently restrained the district clerk from distributing funds held in the registry as ordered by the agreed order to distribute funds, this was not signed until almost three weeks after the agreed order to distribute funds had become final. The record does not reflect whether Investment received a distribution of the funds it was awarded. If the funds awarded to Investment were affected by the temporary injunction, nothing prevented it from intervening and challenging the injunction as to funds owned by it.

5

1993, orig. proceeding). In conditionally granting the writ, the court of appeals held that, once his garnishment judgment became final, "Gonzales was entitled to the issuance of a writ of execution against this property and the distribution of the funds to him." *Id.* at 257. Even though the funds were in the registry of the court, since the judgment was final, there was nothing to be done but distribute the funds to the proper party. *Id.* Similarly, in this case, once the agreed order to distribute funds became final, Keathley's ownership of the $40,000.00 became determined; at that point, there was nothing left for the district clerk to do but distribute it to Keathley. As a result, the funds were subject to either levy by writ of execution or garnishment. *Id.* at 256–57; *Challenge Co. v. Sartin*, 260 S.W. 313, 314 (Tex. Civ. App.—Dallas 1924, no writ). Since, under the facts of this case, the funds payable by the court's clerk were subject to levy and could be reached by a writ of execution, we find that there is legal support for the trial court's order. We overrule this point of error.

*(2)     The Funds Payable by the Franklin County District Clerk Were Not <u>in Custodia Legis</u>*

Keathley also asserts that disbursing the funds to Baker was error because the funds held by the court's clerk were *in custodia legis* and, thus, not subject to levy. We disagree.

Usually, when funds or property are held by an instrumentality of the court, and are subject to the control of the court, the fund or property is held *in custodia legis*. *Gonzales*, 854 S.W.2d at 256; *Sartin*, 260 S.W. at 314. Property held *in custodia legis* is generally exempt from levy by writ of execution or garnishment. *See, e.g.*, *First S. Props., Inc. v. Vallone*, 533 S.W.2d 339, 343 (Tex. 1976) (execution); *Daniels v. Pecan Valley Ranch, Inc.*, 831 S.W.2d 372, 382 (Tex. App.—San Antonio 1992, writ denied) (garnishment); *Houston Drywall, Inc. v. Constr. Sys., Inc.*, 541

6

S.W.2d 220, 221 (Tex. App.—Houston [1st Dist.] 1976, no writ) (garnishment).  The purpose of this doctrine is to protect the jurisdiction of the court first exercising power over the property and to avoid conflicts with other courts having concurrent jurisdiction.  *Vallone*, 533 S.W.2d at 343; *Gonzales*, 854 S.W.2d at 256–57; *Daniels* 831 S.W.2d at 383.  Since the doctrine was not developed to protect the rights of any party claiming an interest in the property, courts do not allow a judgment debtor to use it to protect funds or property from levy by writ of execution or garnishment.  *Daniels*, 831 S.W.2d at 383.  Further, when circumstances change such that the purpose of the doctrine is no longer served in a particular situation, then its ban on levy and garnishment also ceases.  *Sartin*, 260 S.W. at 314.  Thus, "when the court enters a decree of distribution, or where nothing more remains for the custodian to do but make delivery of the property or payment of the money, the reason for the doctrine of *in custodia legis* is satisfied, and the property becomes subject to levy under Texas law."  *Gonzales*, 854 S.W.2d at 256–57 (citing *United States v. Powell*, 492 F.Supp. 1030, 1032 n.1 (W.D. Tex. 1980), *aff'd*, 639 F.2d 224 (5th Cir. 1981)); *Hardy*, 556 S.W.2d at 844; *Sw. Bell Tele. Co. v. Watson*, 413 S.W.2d 846, 848 (Tex. Civ. App.—Corpus Christi 1967, no writ); *Sartin*, 260 S.W. at 314.

Keathley recognizes that the trial court in Franklin County ordered distribution of the funds, but argues that, since that order had not yet become final when the writ of execution was levied, the funds remained *in custodia legis* and not subject to levy, citing *Houston Drywall, Inc.* In that case, Construction Systems, Inc. served a writ of garnishment on the district clerk on December 19, 1975, seeking to enforce a prior judgment in the amount of $4,473.63 it obtained against Houston Drywall, Inc.  *Houston Drywall, Inc.*, 541 S.W.2d at 221.  On that same date, a

7

judgment was entered in a separate cause awarding Houston Drywall $9,448.37 out of $85,295.00 in funds that had been deposited in the registry of the court. *Id.* The garnishee's answer was due January 12, 1976. After the trial court entered judgment in favor of the garnishor, Houston Drywall, Inc., appealed. *Id.* The Houston Court of Appeals recognized that the trial court had entered a decree of distribution and that the funds would be subject to garnishment if the decree was final for the purposes of garnishment. *Id*. at 221–22. It noted that, even though a demand may be "liquidated and fixed by the terms of the judgment, [it] is not subject to garnishment until the judgment becomes final in the sense that it can neither be set aside nor reversed on appeal." *Id*. at 222 (citing *Alexander v. Berkman*, 3 S.W.2d 864, 868 (Tex. Civ. App.—Waco 1927, writ ref'd)). However, it also recognized that, when the answer of the garnishee is not due until after the judgment becomes final, the judgment is subject to garnishment. *Id.* (citing *Raley v. Hancock*, 77 S.W. 658 (Tex. Civ. App. 1903, no writ)). In the case before it, because the garnishee's answer was due before the judgment awarding Houston Drywall $9,448.37 became final, the court of appeals held it had not become "fixed and established" by a judgment that could not be set aside, and was therefore not subject to garnishment. *Id.*

The facts in our case, however, distinguish it from *Houston Drywall, Inc.* In our case, the agreed order of dismissal and agreed order to distribute funds were entered March 25, 2011. Neither a motion for new trial nor a notice of appeal was filed from those orders, and they became final April 24, 2011. The writ of execution was issued and served on the district clerk March 30, 2011. The writ required it to be returned within thirty days of its issuance, making its return date April 29, 2011. Thus, the return of the writ was not due until after the trial court lost plenary power

over the funds and could not modify or set aside the agreed order to distribute funds. Hence, on April 29, 2011, when the return of the writ was due, nothing more remained for the district clerk to do but distribute the funds. In addition, in our case, unlike *Houston Drywall*, *Inc.*, the trial court entered a temporary restraining order April 14, 2011, thereby effectively protecting its jurisdiction over the funds until the agreed order to distribute funds became final. By doing so, it fulfilled the purpose of the *in custodia legis* doctrine. Once the agreed order to distribute funds became final, however, the doctrine's purpose was no longer being served, and the doctrine's protection of the funds ceased. The funds were subject to levy.

*(3)*      *Res Judicata Bars Claims that the Vacation and Reinstatement of the March 8 Judgment Render the Judgment Invalid to Support Execution*

Baker seeks to defeat all but one of Keathley's points of error under the doctrine of res judicata. Baker points to Keathley's motion to quash the writ of execution filed in Smith County in which Keathley challenged the validity of the writ of execution and the validity of the levy on the Franklin County District Clerk.[9] Since the court in Smith County denied the motion to quash and upheld the validity of the writ, Baker argues that Keathley is precluded from relitigating any claims that were previously litigated, or could have been litigated, in Smith County.

---

[9]While his appeal of the April 18 order was pending in the Tyler Court of Appeals, Keathley filed a motion to quash writ of execution in cause number 51,959-B. In his motion, Keathley asserted that the writ was void since the March 8 judgment under which it was issued was vacated by the April 12 judgment, that the April 18 order did not reinstate the writ, and that the April 18 order was now the final judgment in the matter. He also asserted that the levy of the writ was illegal because of lack of prior notice to him, as the judgment debtor, which deprived him of the opportunity to declare his exempt property, and that it was an attempted garnishment of his property in violation of the rules and statutes governing garnishment. On September 14, 2011, the Smith County court entered its order denying Keathley's motion to quash, holding that the March 8 judgment was the final judgment and that the writ of execution was "in accordance with Rules 627 and 628 of the Texas Rules of Civil Procedure," was "issued on said Final Judgment" and "was valid and proper." It is undisputed that Keathley did not pursue a writ of mandamus from this order.

9

Ordinarily, when a second action between the same parties, or those in privity with them, involves claims that were or could have been asserted in the first action, and there was a final determination on the merits in the first action by a court of competent jurisdiction, the doctrine of res judicata "'precludes a second action by the parties and their privies on matters actually litigated and on causes of action or defenses arising out of the same subject matter that might have been litigated in the first suit.'" *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (quoting *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984)). "The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 629 (Tex. 1992).

This doctrine has been modified for those situations in which, as here, the initial lawsuit is brought in a court of limited jurisdiction and the subsequent suit is brought in district court. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.004 (West 2015).[10] In such a case, res judicata bars only those claims that were actually litigated in the lower trial court, and does not bar unlitigated claims that could have been litigated in the lower trial court. *Kizer v. Meyer, Lytton, Alen & Whitaker, Inc.*, 228 S.W.3d 384, 391 (Tex. App.—Austin 2007, no pet.); *Webb v. Persyn*, 866 S.W.2d 106,

---

[10]Section 31.004 provides,

> (a)     A judgment or a determination of fact or law in a proceeding in a lower trial court is not res judicata and is not a basis for estoppel by judgment in a proceeding in a district court, except that a judgment rendered in a lower trial court is binding on the parties thereto as to recovery or denial of recovery.

TEX. CIV. PRAC. & REM. CODE ANN. § 31.004(a). A "lower trial court" includes a statutory county court. TEX. CIV. PRAC. & REM. CODE ANN. § 31.004(c).

107 (Tex. App.—San Antonio 1993, no writ); *McClendon v. State Farm Mut. Auto. Ins. Co.*, 796 S.W.2d 229, 232 (Tex. App.—El Paso 1990, writ denied).

The relevant inquiry, then, is what claims were actually litigated in Smith County. The inquiry starts with a comparison of the pleadings filed in the respective courts.[11] *Kizer*, 228 S.W.3d at 391. If the Franklin County pleadings allege claims not alleged in the Smith County action, then the new claims are not barred by res judicata. *Id.* In the Smith County action, Keathley alleged that the writ of execution was void or invalid because the March 8 judgment was vacated by the April 12 judgment, that the April 18 order did not reinstate the writ of execution, and that the April 18 order became the final judgment and required issuance of a new writ of execution. He also alleged that the levy of the writ of execution on the Franklin County District Clerk was illegal because it prevented Keathley from designating any property as required by Sections 42.001 and 42.002 of the Texas Property Code, it failed to give him the statutorily required notice, and it was an attempted garnishment that violated the requirements of Sections 63.001 through 63.008 of the Texas Civil Practice and Remedies Code. Keathley made similar claims challenging the validity of the writ of execution and the legality of the levy of the writ in Franklin County. However, Keathley's brief in the Smith County court addressed the validity of the writ of execution based only on the finality of the March 8 judgment, and the effects of the April 12 judgment and April 18 order on the March 8 judgment. Further, the Smith County court order denying

---

[11]The only record we have of the Smith County actions are unauthenticated copies of the motion to quash the writ of execution, plaintiff's brief on final judgment and writ of execution (Keathley's brief), and the order on plaintiff's motion to quash the writ of execution (order denying motion to quash), attached to Baker's brief in support of party in interest's motion to dissolve temporary injunction. Keathley did not challenge the authenticity of these pleadings in the trial court or in this Court.

11

Keathley's motion to quash addressed only the validity of the writ of execution, holding that the March 8 judgment was its final judgment in the underlying case and that the writ of execution issued on that judgment was valid and proper. No final order appears in the record related to the challenge directed at the levy. Therefore, it appears that the only claims actually litigated in the Smith County court, which are barred by res judicata, were those related to the validity of the writ of execution.

In his original application for equitable relief and declaratory judgment filed in Franklin County, Keathey sought a declaratory judgment that the March 8 judgment, under which the writ of execution was issued, was not a final judgment. Keathley also sought a declaratory judgment that the writ of execution was void as a result of the April 12 judgment vacating the March 8 judgment. These claims were renewed and continued to be asserted by Keathley in Franklin County after the denial of the motion to quash in Smith County became final. Keathley also opposed Baker's motion to dissolve the temporary injunction, in part, based on his contention that the March 8 judgment was not final since it was modified by the Tyler Court of Appeals.

Res judicata bars Keathley's claims that the trial court erred in disbursing funds to Baker because the writ of execution was "voided" when the March 8 judgment was "revoked" by the April 12 judgment, reinstated by the April 18 order, and "reformed and affirmed" by the Tyler Court of Appeals. The doctrine also bars Keathley's argument in this Court that the March 8 judgment was "interlocutory" and that the April 12 judgment vacating it voided the writ of execution issued pursuant to it.

12

*(4)    Arguing that the Execution Was Premature Is an Improper Collateral Attack on the Smith County Judgment*

Keathley also argues, without citing authority, that the Tyler Court of Appeals' judgment in modifying the amount of attorney fees awarded for appeal, while affirming the March 8 judgment awarding attorney fees through trial, makes the March 8 judgment interlocutory and unenforceable.[12] That decision occurred after the trial court in Smith County denied the motion to quash. Therefore, this claim was not actually litigated in Smith County and is not barred by res judicata. *See Kizer*, 228 S.W.3d at 391–92. Although not entirely clear, Keathley seems to argue that the judgment did not become final until after the Tyler Court of Appeals issued its mandate, which would make the issuance of the writ of execution premature.

A writ of execution that is issued prematurely is voidable, but not void. *Interstate Life Ins. Co. v. Arrington*, 307 S.W.2d 146, 148 (Tex. Civ. App.—Texarkana 1957, no writ). A voidable writ may not be collaterally attacked, but may be challenged only in the court issuing the writ. *Thomas v. Thomas*, 917 S.W.2d 425, 436 (Tex. App.—Waco 1996, no writ); *Arrington*, 307 S.W.2d at 148. Therefore, this challenge could have been brought only in the Smith County action.[13]

---

[12]Keathley properly preserved this point by orally arguing this point at the trial court's hearing on the motion to dissolve the temporary injunction.

[13]Even if this claim could have been brought in the Franklin County trial court, Keathley has not shown error. For a valid writ of execution to issue, a final and appealable order must be signed. *See Hood v. Amarillo Nat'l Bank*, 815 S.W.2d 545, 548 (Tex. 1991). To be final, a judgment must dispose of all parties and all issues in a lawsuit. *Henderson v. S. Farm Bureau Ins. Co.*, 370 S.W.3d 1, 4 (Tex. App.—Texarkana 2012, pet. denied). Further, unless a statutory exception exists authorizing appeal, only final judgments may be appealed. *Ross*, 698 S.W.2d at 365. As we have previously discussed, the underlying judgment from the Smith County trial court was appealed to the Tyler Court of Appeals, which concluded that the April 18 order reinstated the March 8 judgment as the final judgment of the trial court. *Keathley*, 2013 WL 1342524, at *4. Neither do we see how the court of appeals remittitur of a part of the appellate attorney fees would affect the validity of the writ. The writ of execution recites a judgment of $70,000.00,

Because Keathley's attacks on the writ of execution that are not barred by res judicata could have been brought only in Smith County, there is legal support for the trial court's order. We overrule this point of error.

*(5)     The Lack of Prior Notice of the Execution Did Not Invalidate the Levy*

Keathley also complains that the trial court erred because the levy on the funds did not follow the requirements of Rule 637[14] of the Texas Rules of Civil Procedure and Section 42.003[15] of the Texas Property Code. His complaint focuses on the fact that he was not notified before the execution[16] and, as a result, was not able to designate property to be levied or to claim his exempt property. He argues that this irregularity made the levy invalid.

---

representing only the judgment for attorney fees through trial and was an accurate recitation of the judgment at the time. This award was affirmed by the court of appeals. *Id.* at \*6. The case was appealed after the writ of execution was issued, and only then did the award of appellate attorney fees become relevant. Although the appellate attorney fees were reduced by the court of appeals, the total amount of the judgment after appeal exceeded the $70,000.00 judgment recited in the writ of execution.

[14]Rule 637 provides,

> When an execution is delivered to an officer he shall proceed without delay to levy the same upon the property of the defendant found within his county not exempt from execution, unless otherwise directed by the plaintiff, his agent or attorney. The officer shall first call upon the defendant, if he can be found, or, if absent, upon his agent within the county, if known, to point out property to be levied upon, and the levy shall first be made upon the property designated by the defendant, or his agent . . . . If no property be thus designated by the defendant, the officer shall levy the execution upon any property of the defendant subject to execution.

TEX. R. CIV. P. 637.

[15]Section 42.003 provides, "If . . . the debtor can be found in the county where the property is located, the officer making a levy on the property shall ask the debtor to designate the personal property to be levied on . . ." TEX. PROP. CODE ANN. § 42.003(a) (West 2014).

[16]Baker does not dispute that Keathley was not notified before the levy.

14

Baker responds that this issue is barred under the doctrine of res judicata,[17] that the officer was not required to notify Keathley since he was not found in the county, and that any irregularity related to failing to notify Keathley was not sufficient to set aside the levy. We agree that the irregularity in this case was not sufficient to invalidate the levy.

Keathley does not cite, and we have not found, any authority stating that the failure of an officer to notify the debtor before executing on his property, standing alone, is sufficient to invalidate a levy of execution.

Certainly, an officer levying a writ of execution "shall first call on the [debtor], if he can be found . . . to point out property to be levied on." TEX. R. CIV. P. 637. There is a similar statutory provision. *See* TEX. PROP. CODE ANN. § 42.003(a). The failure of an officer to make any attempt to contact the debtor and give him or her an opportunity to designate property to be levied on is an irregularity. *See Collum v. DeLoughter*, 535 S.W.2d 390, 393 (Tex. Civ. App.—Texarkana 1976, writ ref'd n.r.e.); *Pantaze v. Slocum*, 518 S.W.2d 407, 411 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.). An irregularity, however, standing alone, will not invalidate an execution sale. *See McCoy v. Rogers*, 240 S.W.3d 267, 275 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 827 (Tex. App.—Texarkana 1999, no pet.); *Collum*, 535 S.W.2d at 393. In *Collum*, a writ of execution was levied on two lots owned by a judgment debtor. Although the lots had a market value of $13,500.00, they were purchased at the execution sale for $2,000.00. *Collum*, 535 S.W.2d at 392. The sheriff failed to give the debtor notice of the sale as

---

[17]As we previously discussed, based on the record before us, we find this issue was not actually litigated in the Smith County court and is not barred.

15

required by the Rules, and also failed to give him the opportunity to designate property under Rule 637. *Id.* Although there were several irregularities, this court noted that, "[s]tanding alone, none of these irregularities would be sufficient to justify setting aside the [execution] sale." *Id.* at 393. Rather, what is required is a showing that the sale was made for a grossly inadequate price, that there were irregularities, and that the irregularities tended to contribute to the inadequate price. *Id.* at 392; *see also McCoy*, 240 S.W.3d at 275; *Brown*, 7 S.W.3d at 827–28. This rule supports the policy in this state to uphold execution sales, and not set them aside merely for irregularities in the sale. *McCoy*, 240 S.W.3d at 274; *Brown*, 7 S.W.3d at 827.

In a situation, as in this case, in which there is no sale, but the property subject to the levy is claimed to be exempt, the debtor may still claim an exemption in the property and challenge the levy, even if he or she was not given the opportunity to do so before the levy. *See, e.g.*, *Hall v. Miller*, 51 S.W. 36, 37 (Tex. Civ. App. 1899, no writ). In *Hall*, the creditor levied an attachment on four horses of the debtor, including two young colts, without giving the debtor an opportunity to select his exemptions and point out the property to be levied on, as required by a predecessor to Section 42.003. *Id.* at 36–37. The court of appeals held that the debtor, at trial, could claim an exemption in the colts; the appeals court affirmed the trial court's holding that the colts were not subject to the levy. The irregularity in failing to give the debtor the opportunity to designate his property, however, did not invalidate the levy as to the two non-exempt horses. *See id.* In this case, Keathley filed his designations of exempt property and claimed the funds as exempt under Section 42.001(d). Therefore, he was able to assert his claim at the trial court, though not afforded the opportunity before the levy. Under these facts, we find that, as with execution sales, the

16

irregularity in levying the writ of execution without first giving Keathley the opportunity to designate his exempt property is not sufficient to invalidate the levy. We overrule this point of error.[18]

*(6)*     *The Funds Payable by the Franklin County District Clerk Were Not Exempt from Execution*

Keathley also claims that his funds in the hands of the court clerk were exempt from execution because they were commissions for personal services. See TEX. PROP. CODE ANN. §§ 42.001(d),[19] 42.002[20] (West 2014). Baker responds that these issues are barred under the doctrine of res judicata,[21] and that the funds were not exempt since they were paid in settlement of litigation. We agree that the funds were not exempt.

The record reveals that the funds in question were paid into the registry of the court by Keathley in the underlying suit with Investment pursuant to an agreed order. Subsequently,

---

[18]In a separate point of error, Keathley further attacks the levy by asserting that the trial court erred in disbursing $30,000.00 to Baker because Baker instructed the officer to levy the writ of execution against all of the $41,763.50 in the registry of the court when Keathley did not own all the funds. This, he says, was wrongful as to the other parties. Under this point of error, Keathley makes no citation to the record. Further, he merely restates the contention under his first point of error that the funds could be reached only by garnishment, which we previously addressed. The only citation to authority is in support of that contention. Our appellate rules require the appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). This requirement is not satisfied by making "conclusory statements unsupported by legal citations. *In re Estate of Taylor*, 305 S.W.3d 829, 835 (Tex. App.—Texarkana 2010, no pet.) (citing *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.)). An issue is waived when the appellant fails to cite relevant legal authority or to present substantive analysis of the issue. *Id.* We find that Keathley has waived this point of error.

[19]Under Section 42.001(d) "[u]npaid commissions for personal services not to exceed 25 percent of the aggregate limitations prescribed by Subsection (a) are exempt from seizure and are included in the aggregate." TEX. PROP. CODE ANN. § 42.001(d). The aggregate limitation for a married couple is $60,000.00. *Id.* at § 42.001(a).

[20]Section 42.002 lists categories of personal property that are exempt under Section 42.001(a). TEX. PROP. CODE ANN. § 42.002.

[21]As we previously discussed, based on the record before us, we find this issue was not actually litigated in the Smith County court and is not barred.

17

Keathley filed a first amended counter-petition seeking damages from Investment for breach of contract and fraud. An examination of the amended counter-petition shows that Keathley sought contractual damages for "his loss of the benefit of the bargain in the form of lost commissions he would have earned if permitted to dispose of the remaining contents of the store, his out-of-pocket costs incurred in preparing for the sale, his loss of income from reducing or stopping his sale efforts for himself and other customers" and "his actual, economic and exemplary damages" for Investment's misrepresentations. In his amended counter-petition Keathley does not allege that Investment owes him earned, unpaid commissions. Further, after the parties in the underlying suit notified the court in Franklin County that they had settled their suit, the court entered its agreed order to distribute funds, reciting that it "considered and approved the Parties' agreement pursuant to the mediated settlement agreement" and granted their "request to distribute funds held in the registry" of the court. Thus, the evidence would support a finding by the trial court that the $40,000.00 held in the registry of the court for Keathley came from the settlement of litigation. Monies received in settlement of litigation are not exempt under any category of personal property. *See* TEX. PROP. CODE ANN. §§ 42.001–.002. Since the funds were not exempt, there is legal support for the trial court's order. We overrule this point of error.

We affirm the judgment of the trial court.


Josh R. Morriss III
Chief Justice


Date Submitted:      May 6, 2015
Date Decided:        June 26, 2015

18